UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


FRANCES DU JU,                                                    Civil No. 3:08-1213-HA

      Plaintiff,                                                OPINION AND ORDER

      v.

KELLY SERVICES, INC., a foreign
business corporation,

      Defendant.
_____

HAGGERTY, District Judge:

      Plaintiff, acting *pro se*, filed this action against her former employer alleging claims of

race and national origin discrimination in violation of 42 U.S.C. § 2000e *et seq.* (Title VII),

retaliation in violation of Title VII and Oregon Revised Statutes 651.010 *et seq.* (Title 51), and

unpaid wages.  Defendant, Kelly Services Inc. (defendant or Kelly) moves for summary

judgment on all of plaintiff's claims.  Defendant also moves to strike portions of plaintiff's

Surreply in Opposition to Defendant's Motion for Summary Judgment.  For the following

reasons, defendant's Motion for Summary Judgment [118] is GRANTED IN PART and Motion

to Strike [127] is GRANTED IN PART.

1 - OPINION AND ORDER

## BACKGROUND

The following facts are stated in the light most favorable to plaintiff, the non-moving party and are undisputed unless noted.  Defendant is a temporary staffing agency headquartered in Troy, Michigan and doing business in Hillsboro, Oregon.  Plaintiff is a Chinese-American female who was raised in Taiwan and became a United States citizen in 1994.  Her first language is Mandarin Chinese and she speaks English as a second language.

Defendant placed an advertisement in the September 19, 2006 issue of *The Asian Reporter* seeking Mandarin-speaking customer service representatives and offering a signing bonus of $500 and a $2,000 bonus for those hirees working through January 31, 2007.  Plaintiff responded to the advertisement, and was hired by defendant on September 28, 2006 to work as a Mandarin-speaking customer service representative at the Convergys-General Motors (Convergys) call center in Hillsboro, Oregon.

During the first few weeks of her employment at Convergys, plaintiff participated in a training class led by Eva Ariceaga (Ariceaga), Convergys' training manager.  Also in the class were two other Mandarin-speaking trainees; one Caucasian male, and another female of Chinese descent.  Finding the training to be too difficult, the other Asian female in the class quit after the first day.  The training, designed by Convergys, included background information about GM vehicles, information about how to access various databases, and skills training for customer service representatives.  During the course of the training, Ariceaga would test the trainees with quizzes and games.

Both plaintiff and the remaining trainee graduated from the training on the same day and were placed on the call center floor.  As a customer service representative, plaintiff was required to answer telephone calls from prospective customers, answer their questions about GM vehicles,

and collect data for marketing purposes.  Initially, plaintiff took calls from both Mandarin and English speaking customers.  However, on October 27, 2006, plaintiff was transferred to the Mandarin-only line by Convergys, reportedly in response to customer complaints regarding plaintiff's English.  Plaintiff contends that her accent is "slight" and did not effect her job performance.  Pl. Decl.¶ 10.  Plaintiff suggests it is possible that defendant, or Convergys, made or directed the phone calls complaining of her English.[1]  Defendant was not involved in the decision to transfer plaintiff to the Mandarin-only line, however, plaintiff's manager at Kelly, April Wester (Wester), met with plaintiff to discuss the transfer.  Plaintiff's pay and schedule remained unchanged following the transfer.

In early November 2006, Convergys requested that defendant counsel plaintiff regarding attendance issues.  Over a four-week period, plaintiff had accrued four unexcused absences and one tardy and had returned late from her breaks.  For each of the unexcused absences, plaintiff had called in sick, and on the day she was tardy, plaintiff had difficulty getting to work because of problems with public transportation.  Plaintiff had also received low quality assurance scores on her telephone calls for failing to stick with her script.

Wester called plaintiff on multiple occasions to discuss these issues and states that plaintiff refused to return her calls.  Plaintiff claims that she routinely called Wester at her request, but at some point, decided to begin communicating in writing only.  Plaintiff sent defendant one to three letters requesting a copy of defendant's paid time off (PTO) policy, requesting her signing bonus, and according to plaintiff, discussing compensation for an

---

[1] During oral argument, it was readily apparent that plaintiff's accent is more than "slight." While plaintiff clearly has a command of the English language, her accent made it difficult for her to be understood, requiring the court reporter to request that plaintiff repeat herself.

unidentified lawsuit.  Plaintiff contends she sent three letters, while defendant contends they only

received either one or two letters on or about November 10, 2006, requesting her signing bonus,

a copy of the PTO policy, and any other bonuses to which she was entitled.  Neither party

submitted copies of any letter.

On November 17, 2006, Wester traveled to Convergys to meet with plaintiff to discuss

performance and attendance issues.  Wester met with plaintiff in a conference room at Convergys

and during the course of that meeting, plaintiff informed her that she would only communicate

with defendant in writing after defendant had responded to her letters in writing.  Plaintiff walked

out of the meeting.

On November 20, 2006, Wester returned to Convergys with her manager, Julie Maxwell

(Maxwell).  Maxwell and Wester, along with a Convergys human resources officer met with

plaintiff.  Plaintiff informed them again that she would only communicate with them in writing

and they informed her that she was being removed from the assignment at Convergys.  According

to defendant, plaintiff was told that she was being removed from the position because of her

refusal to communicate and for insubordination.  Plaintiff contends that they told her she was

being terminated because of her poor English.

At the conclusion of the meeting, plaintiff was escorted to her desk to gather her

belongings and clock out.  On her final day of employment at Convergys, plaintiff worked 1 hour

21 minutes 23 seconds (1.3564 hours according to plaintiff's calculations).  On November 28,

2006, plaintiff received her final paycheck, paying her for 1.25 hours of work on her final day at

Convergys.  After her removal from the temporary assignment at Convergys, defendant contends

that plaintiff remained eligible for placement at other assignments.  In order to remain eligible for

such placement, plaintiff was required to maintain contact with defendant regarding her

4 - OPINION AND ORDER

availability.  Plaintiff did not do so and was never assigned to a new job.

During the course of her employment with defendant, plaintiff contends that she was subjected to a number of instances of discrimination.  Based on plaintiff's briefing, it is unclear exactly which incidents that took place were discriminatory, accordingly, only the most serious incidents are recounted below.  The vast majority of these allegedly discriminatory actions were perpetrated by Convergys's employees.

Plaintiff contends that she was subjected to discrimination during her training class with Ariceaga.  According to plaintiff, Ariceaga favored the Caucasian male in the class.  Ariceaga reportedly praised the other trainee for typing fast, but did not praise plaintiff for the same; said that plaintiff and the other trainee had tied during a game that plaintiff had actually won; and blocked plaintiff's view of the blackboard with her heavyset body.  On October 4, 2006, Ariceaga reportedly told plaintiff that she had learned from other trainees of Chinese heritage that "Chinese people don't ask teacher [sic] questions to show their respect."  Pl. Depo. 80:25-81:1. On October 5, 2006, plaintiff alleges that Ariceaga asked for headache medication from the students in the class.  Plaintiff reported that she only had prescription headache medication and could not provide it to Ariceaga.  Plaintiff asserts that when returned home from work that evening, she discovered that a Convergys security guard had searched her backpack at Ariceaga's request and had taken one of her prescription pills.  Plaintiff did not actually see anyone search her bag, and there is no evidence in the record that anybody else did either.  Lastly, plaintiff contends that Ariceaga complained about plaintiff to her Convergys team manager, Laurie Johnson, at the conclusion of the training class, though plaintiff did not hear the conversation. Plaintiff was placed on the call center floor, along with the other trainee, at the conclusion of the training.

5 - OPINION AND ORDER

Once plaintiff was placed on the call center floor, the alleged discrimination continued. Plaintiff claims that an unknown Convergys IBM consultant sabotaged her computer by placing a "black square" on her screen, preventing her from viewing portions of the screen. Her team managers attempted to help her fix the problem. She also claims that she did not have access to web pages for certain makes and models of GM vehicles when other employees did.

In addition to the alleged search of her backpack, plaintiff contends that Convergys's security guards discriminated against her on at least two other occasions. The first is when she did not receive her security badge in a timely fashion. Plaintiff is not sure who delayed her receipt of the security badge, and whether her receipt of the badge took longer than it did for other employees. The record reflects that it often took a couple weeks for Convergys's employees to receive their security badge. The second is when she left the lights on in her car and the security guards did not page her. Her car's battery died. Plaintiff asserts that other employees were paged when they left the lights on in their cars, however, according to Ariceaga, there was no intercom system at Convergys because it is a call center. The security guards later attempted to help plaintiff jump-start her car.

Lastly, plaintiff claims she was discriminated against by defendant. Plaintiff did not receive her signing bonus until sometime in mid to late November. Her Caucasian coworker received his at approximately the same time and they may have received their bonuses on the same day. Plaintiff also contends that the manner in which she was terminated was discriminatory because she was escorted from the building, and was not paid in full for her last day of work. She did not receive pay for .1064 hours of work ($1.17 according to plaintiff's calculations) and was not paid until one week after her last day of work. Additionally, plaintiff claims that the termination of her assignment at Convergys was retaliatory. Plaintiff contends

6 - OPINION AND ORDER

she complained to Wester regarding the search of her backpack and the comment made by Ms.

Ariceaga about Chinese students not asking questions at a meeting held on October 10 or 11,

2006.  Plaintiff asserts that she reported these actions had been taken against her because of her

race or national origin.  Defendant responds that the only complaints received were regarding the

delay of her bonus and the search of her purse, and that plaintiff never indicated that she believed

these were the result of discrimination.

## STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  On summary judgment, the court must view the facts and draw inferences in the manner

most favorable to the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655

(1962).  The moving party bears the initial burden of demonstrating the absence of a genuine

dispute of material fact for trial, but it need not disprove the other party's case.  *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986).  Once the moving party meets its burden, the

adverse party may not rest upon the mere allegations or denials of the adverse party's pleading,

but must set forth specific facts showing that there is a genuine dispute for trial.  *Id.* at 248-49.

All reasonable doubt as to the existence of a genuine factual dispute should be resolved against

the moving party.  *MetroPCS, Inc. v. City & County of San Francisco*, 400 F.3d 715, 720 (9th

Cir. 2005) (citation omitted).  Additionally, this court is mindful of the Ninth Circuit's high

standard for granting summary judgment in employment discrimination cases.  *Schnidrig v.*

*Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996).

However, deference to the non-moving party has limits.  The non-moving party "must set

forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The

"mere existence of a scintilla of evidence in support of the [non-moving party's] position [is] insufficient; there must be evidence on which the jury could reasonably find for [the non-moving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). Where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citation omitted).

## DISCUSSION

Plaintiff brings three claims for race and national origin discrimination in violation of Title VII, retaliation in violation of Title VII and Oregon's Title 51, and unpaid wages in violation of Oregon law. Defendant moves for summary judgment on all three claims in plaintiff's Complaint. Defendant also moves to strike portions of plaintiff's Surreply.

### 1.      First Claim for Relief - Race and National Origin Discrimination

Plaintiff's first claim for relief alleges race and national origin discrimination in violation of Title VII. Plaintiff advances theories of disparate treatment, disparate impact, and hostile work environment. The standard for establishing a prima facie case of discrimination is identical under federal and Oregon law. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001) (citing *Henderson v. Jantzen, Inc.*, 719 P.2d 1322, 1323-24 (Or. Ct. App. 1986)).[2]

### A.      Disparate Treatment

In the Ninth Circuit, claims of disparate treatment discrimination, such as those in this case, are analyzed pursuant to the burden-shifting framework established by *McDonnell Douglas*

---

[2] Though plaintiff's pleadings are not entirely clear, it does not appear that she properly alleges violations of Oregon law in her first claim for relief. However, because she is *pro se*, this court gives her the benefit of the doubt and analyzes her discrimination claims as if she had alleged violations of both state and federal law.

*Corp. v. Green*, 411 U.S. 972 (1973). *Chuang v. Univ. of Cal.*, 225 F.3d 1115, 1123 (9th Cir.

2000). Under the *McDonnell Douglas* framework, "a plaintiff alleging disparate treatment under

Title VII must first establish a prima facie case of discrimination." *Id*. (citation omitted). To

establish a prima facie case, a plaintiff must demonstrate that: (1) she is a member of a protected

class, (2) she was performing her job according to her employer's legitimate expectations, (3) she

was subject to an adverse employment action, and (4) similarly situated persons outside of her

protected class were treated more favorably. *Id*. "The requisite degree of proof necessary to

establish a prima facie case . . . on summary judgment is minimal and does not even need to rise

to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889

(9th Cir. 1994). Once the plaintiff has established a prima facie case, the burden of production

shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the challenged

action." *Chuang,* 225 F.3d at 1123-24. If the employer meets this burden of production, "the

plaintiff must show that the articulated reason is pretextual either directly by persuading the court

that a discriminatory reason more likely motivated the employer or indirectly by showing that the

employer's proffered explanation is unworthy of credence." *Id.* at 1124 (citing *Texas Dep't of*

*Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981), internal quotations omitted).

In an employment discrimination action, the plaintiff "need produce very little evidence

in order to overcome an employer's motion for summary judgment," because "'the ultimate

question is one that can only be resolved through a searching inquiry-one that is most

appropriately conducted by a factfinder, upon a full record.'" *Id.* (quoting *Schnidrig*, 80 F.3d at

1410.)

Here, defendant contends that plaintiff has failed to prove a prima facie case of disparate

treatment discrimination, and that in the alternative, plaintiff has failed to show that defendant's

9 - OPINION AND ORDER

proffered reason for removing her from Convergys was pretextual. Specifically, defendant

contends that plaintiff cannot establish the second, third, or fourth elements of her disparate

treatment claim.

Plaintiff clearly meets the first element based on her race (Asian) and national origin

(Chinese). In support of the second element, that plaintiff was performing her job according to

defendant's legitimate expectations, the only admissible evidence[3] offered by plaintiff is her self-

assessment of her performance, which she claims was adequate. An employee's subjective self-

assessment is relevant evidence for the purposes of the minimal showing needed to establish a

prima facie case, however, it is not clear if such evidence is sufficient alone to meet plaintiff's

burden. *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 659-60 (9th Cir. 2002)

(holding that plaintiff employee's self-assessment of his performance was relevant, and when

bolstered by other evidence that he had received no formal write-ups and that his work-product

equaled that of his co-workers, was sufficient to prove a prima facie case). Unlike in *Aragon*,

plaintiff has produced no evidence, aside from her self-assessment, that she performed her job

adequately. *See Nguyen v. Qualcomm, Inc.*, No. 09CV1925-MMA, 2011 WL 1119564, *8 (S.D.

Cal. March 28, 2011) (holding that absent additional evidence, a plaintiff's self-assessment alone

is insufficient to establish a prima facie case). Moreover, it is undisputed that she did not meet

defendant's legitimate and reasonable expectations regarding communication, given that she

acknowledges walking out of a meeting with her supervisor and insisting that all communication

between her and her employer take place in writing. It is only because plaintiff is *pro se*, that this

court gives her the benefit of the doubt and assumes, for the purposes of argument, that she has

---

[3] Plaintiff also offers inadmissible hearsay statements that she received compliments from
a Convergys manager.

satisfied the minimal requirements of proving the second element of her prima facie case.

Defendant contends that plaintiff was not subject to an adverse employment action, while plaintiff contends that she was subject to a number of adverse employment actions.  "An adverse employment action is one that materially affects the compensation, terms, conditions, or privileges of . . . employment."  *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (quotation and citations omitted).  It is quite obvious that a number of the alleged adverse employment actions were not, in fact, adverse employment actions.  For example, the "black square" on her computer screen was an instance of a vexing and perhaps avoidable technical problem, not an employment action, and the failure of the security guards to page her regarding her lights, was merely a self-created inconvenience.

The only two actions that are arguably adverse employment actions were her transfer to the Mandarin-only line, and her removal from Convergys.  Her transfer to the Mandarin-only line fails for two reasons.  The first is that defendant did not move her to the Mandarin-only line, Convergys did.  *See, e.g., Woods v. Chub & Son*, 156 Fed. Appx. 906, (9th Cir. 2005) (employer not liable for actions of a third party merely because of presence during conduct of third party); *Caldwell v. ServiceMaster Corp*., 966 F. Supp. 33, 46-48 (D.D.C. 1997) (holding that a defendant temp agency employer is liable for discriminatory conduct only when a plaintiff can show the defendant knew or should have known about discrimination and failed to take corrective measures within its control).  Here, defendant undoubtedly knew about the transfer to the Mandarin-only line, but there is no evidence that the transfer was either discriminatory, or that defendant had any control over the decision.  *Caldwell*, 966 F. Supp. at 48 ("[w]hile reassigning [plaintiff] was within [defendant's] control, changing [the] work environment was not").  Secondly, and more importantly, the move to the Mandarin-only line is not an adverse

employment action.  Her move to the Mandarin-only line was not accompanied by a pay-cut,

demotion, or any other *material* change in her employment conditions.  However, there can be no

doubt that the removal from Convergys was an adverse employment action.  Accordingly,

plaintiff has satisfied the third element of her prima facie case.

Plaintiff fails to satisfy the fourth element of her prima facie case.  The only evidence she

offers that similarly situated persons outside of her protected class were treated more favorably is

her assertion that her Caucasian co-worker was treated more favorably than she.  Much of the

evidence she offers takes the form of inadmissible hearsay, but in short, she contends that

Ariceaga favored him during their training class and that her co-worker's Mandarin was

comparatively worse than her English yet he was not transferred to the English-only line.

Employees are "similarly situated when they have similar jobs and display similar

conduct." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003) (citing *Ward v.

Procter & Gamble Paper Prods. Co.*, 111 F.3d 558, 560-61 (8th Cir. 1997)).  "The employees

need not be identical; they must be similar in all material respects."  *Nicholson v. Hyannis Air

Serv., Inc.*, 580 F.3d 1116, 1125 (9th Cir. 2009).  While she and her Caucasian co-worker held

the same position, there is no evidence that there were any complaints regarding either his

English or his Mandarin.  Additionally, there is no evidence that he refused to communicate with

defendant other than in writing, that he walked out of any meetings with defendant, that he had

attendance problems, or that he received low quality assurance scores.  *Vasquez*, 349 F.3d at 641

(holding that two employees are not similarly situated when there is no evidence that one did not

engage in problematic conduct of comparable seriousness to the other).  Here, the only evidence

to suggest that her co-worker was in any way deficient is her assertion that her English was better

than his Mandarin, and that he occasionally needed help with his Mandarin.  Not only has she

failed to show that her co-worker was similarly situated to herself, plaintiff offers scant evidence that he was treated more favorably than she.  In fact, the evidence demonstrates that they both graduated from the training class on the same day, were both placed on the call-center floor at the same time, and both received their signing bonus at approximately the same time, if not on the same day.

Had plaintiff been able to meet all four elements of her prima facie case, defendant has offered more than enough evidence to meet their burden of production to articulate a legitimate reason (her refusal to communicate with her supervisor and her insubordination) for removing her from Convergys.  The insubstantial and uncompelling evidence offered in support of plaintiff's prima facie case, fails entirely at the third stage of the *McDonnell Douglas* framework. *See Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1158 (9th Cir. 2010) (noting that the burden of proof is substantially higher at the pretext stage, requiring specific, substantial evidence).

### B.    Disparate Impact

Plaintiff contends that defendant's racial discrimination resulted in a disparate impact on plaintiff.  Disparate impact claims differ from disparate treatment claims in that they "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Intl. Bhd. Of Teamsters v. U.S.*, 431 U.S. 324, 335 n.15 (1977).  In support of such a claim, a plaintiff might identify an employment practice or policy causing the disparate impact and, may in fact, offer statistical evidence in support of the claim.  As plaintiff has offered no plausible disparate impact theory, and no evidence in support of that theory, this court can only conclude that she proceeded under this theory accidentally, and must reject that claim.

### C.    Hostile Work Environment

13 - OPINION AND ORDER

Plaintiff contends that the discrimination she was subjected to resulted in a hostile work environment. In particular, she claims that the black square on her computer made it difficult for her to see the computer screen well, made her dizzy, caused headaches, made it difficult for her to perform her job adequately, and ultimately created a hostile work environment.

To establish a prima facie case for a hostile work environment claim, plaintiff must raise a triable issue of fact as to whether: (1) defendant subjected her to verbal or physical conduct based on her race or national origin; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008). It is not a trifling matter to prove that conduct is sufficiently severe or pervasive enough to satisfy the third element of a prima facie case. *See Manatt v. Bank of Am.*, 339 F.3d 792, 798 (9th Cir. 2003) (finding that employees who used the phrase "China man" and pulled their eyes back with their fingers to mock the appearance of Asians did not create a hostile work environment for a Chinese woman); *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir. 2000) (finding no hostile work environment where supervisor referred to a female superintendent as a "castrating bitch," "madonna," or "regina" and called the plaintiff "Medea"); *Kang v. U. Lim Am.*, *Inc.*, 296 F.3d 810, 817 (9th Cir. 2002) (finding harassment where employer verbally and physically abused plaintiff because of his race, including informing plaintiff on numerous occasions that he had to work harder because he was Korean and that Koreans did not work as hard as others); *Draper v. Coeur Rochester*, 147 F.3d 1104, 1109 (9th Cir. 1998) (finding hostile work environment where supervisor made repeated sexual remarks to plaintiff employee, told her his sexual fantasies and that he wanted to have sex with her, commented on her physical characteristics, and asked over a loudspeaker if she needed help changing her clothes).

14 - OPINION AND ORDER

Plaintiff's hostile work environment claim flirts with frivolity. Considering each of the purpored acts of discrimination, including the alleged sabotage of her computer, it is unquestionable that plaintiff has failed to show that the conduct was either severe or pervasive. Moreover, nearly all of the discriminatory acts were carried out by Convergys's employees and were not subject to either the approval or control of defendant. As no reasonable jury could find that plaintiff was subject to discrimination under any of the above three theories, defendant is awarded summary judgment on plaintiff's discrimination claim.

### 2.    Retaliation Claim

Plaintiff asserts that she complained to defendant about the search of her backpack and the comment made about Chinese students not asking questions and reported that these incidents were the result of discrimination.[4] Plaintiff contends that these statements were made at a meeting held on October 10 or 11, 2006. Though plaintiff does not address the issue in her briefing regarding retaliation, this court has also considered the fact that she wrote at least one letter regarding her unpaid signing bonus. Plaintiff was removed from Convergys on November 21, 2006.

Retaliation claims under Oregon state law are analyzed pursuant to the same framework as those brought under Title VII. *Harris v. Pameco Corp.*, 12 P.3d 524, 532 (Or. Ct. App. 2000). To make out a *prima facie* case of retaliation, plaintiff must show that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between her activity and the employment action. *Raad v. Fairbanks N. Star Borough Sch.*

---

[4] Defendant contends that these portions of her declaration are inadmissible hearsay. However, for purposes of analyzing plaintiff's retaliation claim, these statements are not considered for the truth of the matter asserted.

*Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003).  The causal connection element may be inferred

based upon the temporal proximity of the adverse action and the complaint of discrimination.

*Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) ("Causation sufficient to establish . . .

[a] prima facie case may be inferred from circumstantial evidence, such as the employer's

knowledge that the plaintiff engaged in protected activities and the proximity in time between the

protected action and the allegedly retaliatory [activity].").  Thereafter, as with plaintiff's disparate

treatment claim, the burden of production shifts to the employer to present legitimate,

nonretaliatory reasons for the adverse employment action.  *Yartzoff*, 809 F.2d at 1376.  Once the

employer carries this burden, plaintiff must produce sufficient evidence to create a genuine issue

of material fact as to whether the reason advanced by the employer was a pretext.  *Id.*

       This court concludes that plaintiff has satisfied her burden of proving a prima facie case.

Plaintiff has adduced enough evidence to create a question of fact regarding whether she engaged

in a protected activity; her complaints regarding discrimination.  Second, as discussed above, her

removal from Convergys constituted an adverse employment action.  Lastly, the court is required

to infer that there is a causal link between her discrimination complaint and her removal based on

the temporal proximity of less than two months between the two actions.  *Yartzoff*, 809 F.2d at

1376 (finding causal link based on temporal proximity of three months).  Accordingly, the

burden of production shifts to defendant to present legitimate, nonretaliatory reasons for the

removal from Convergys.

       Defendant clearly meets their burden of production in presenting legitimate,

nonretaliatory reasons for removing plaintiff from Convergys.  The undisputed evidence

demonstrates that plaintiff refused to communicate with defendant other than in writing, and

walked out of a meeting with her supervisor.  These issues alone would provide more than

enough evidence for defendant to meet their burden of production, however, defendant has also produced evidence demonstrating that plaintiff had unexcused absences, and that Convergys complained regarding plaintiff's performance.

Once defendant carries the burden of "articulating a legitimate nonretaliatory reason . . . the legally mandatory inference of retaliatory discrimination arising from the plaintiff's prima facie case drops away." *Yartzoff*, 809 F.2d at 1377 (citing *Burdine*, 450 U.S. at 255 n.10). Plaintiff is then charged with producing evidence from which a reasonable jury could infer that defendant removed her from Convergys, not for the proffered reasons, but because she complained regarding the discrimination. Plaintiff can demonstrate that the proffered reasons are pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. The Ninth Circuit has noted that "a grant of summary judgment, though appropriate when evidence of discriminatory intent is totally lacking, is generally unsuitable in Title VII cases in which the plaintiff has established a prima facie case because of the elusive factual question of intentional discrimination." *Yartzoff*, 809 F.2d at 1377 (quotation and citations omitted). Here, evidence of discriminatory intent is totally lacking, and summary judgment is appropriate. On the whole, this case lacks any substantial evidence of discriminatory intent. The sole smidgen of any sort of discriminatory animus, was the statement made by Ariceaga regarding Chinese students not asking questions. Ariceaga was not employed by defendant. There is no evidence whatsoever of defendant's discriminatory or retaliatory intent. Defendants are granted summary judgment on plaintiff's retaliation claim.

### 3.    Wrongful Termination

Plaintiff requests that this court allow her to proceed on a wrongful termination theory,

should her discrimination and retaliation claims be dismissed.  Plaintiff bases her wrongful termination claim on her assertion that defendant terminated her in retaliation for her request for the signing bonus and PTO policies.  The Ninth Circuit upholds a "policy of liberal construction in favor of *pro se* litigants." *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998). Litigants have a statutory right to self-representation in civil matters, *see* 28 U.S.C. § 1654, and are entitled to meaningful access to the courts.  *Rand*, 154 F.3d at 957 (citing *Bounds v. Smith*, 430 U.S. 817, 823 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974); *Johnson v. Avery*, 393 U.S. 483 (1969); *Hatfield v. Bailleaux*, 290 F.2d 632, 637 (9th Cir. 1961)). "Consequently, [the courts] tolerate informalities from civil pro se litigants." *Id*. (citations omitted).  However, this court's indulgence of plaintiff's technical deficiencies and informality has limits.  Plaintiff first raises her wrongful termination claim in her Response to defendant's Motion for Summary Judgment. Even as a *pro se* litigant, plaintiff raises this claim too late for consideration by this court.

### 4.    Unpaid Wages

Plaintiff seeks unpaid wages for the last day of her employment at Convergys as well as a penalty for wages that were not paid in a timely fashion.  As discussed above, plaintiff received wages for her last day of work one week after her final day of employment and according to plaintiff's calculations, $1.17 short.  Pursuant to Oregon's wage payment statutes, when an employer discharges an employee, "all wages earned and unpaid at the time of the discharge or termination become due and payable not later than the end of the first business day after the discharge or termination."  ORS 652.140(1).  The employee may be entitled to penalty wages if the employer willfully fails to make the payment by the end of the first business day after termination.  ORS 652.150.

This court first turns to plaintiff's claim that her final paycheck was short, as it included

wages for 1.25 hours of work, rather than the 1.3564 hours that plaintiff actually worked. Defendant contends that plaintiff was paid appropriately, as it lawfully rounded plaintiff's wages to the nearest quarter hour. This court agrees. Oregon does not have a regulation or statute regarding rounding, however, the Oregon Bureau of Labor and Industries (BOLI) relies on federal regulations for guidance. *See* BOLI, *Employer Can "Round" Hours, But Must ensure that All Time is Actually Paid*, www.oregon.gov/BOLI/TA/TA_COL_012307_Rounding_Hours.pdf. (citing 29 C.F.R. 785 and noting that rounding in increments no longer than fifteen minutes is acceptable so long as it does not result, over a period of time, in a shortfall of wages). Because there is no evidence to suggest that defendant's rounding policy was not applied fairly, or resulted in unpaid wages over time, defendant is awarded summary judgment on plaintiff's claim for $1.17 in unpaid wages.

The court now turns to plaintiff's claim that her final paycheck was untimely. Upon termination, plaintiff was entitled to all unpaid wages "not later than the end of the first business day after the discharge or termination." ORS 652.140(1). Here the only questions are whether plaintiff's removal from Convergys constituted "discharge or termination" and, if so, whether defendant "willfully" delayed payment of her wages. Defendant contends that plaintiff was not terminated, and remained an employee eligible for placement at another firm following her removal from Convergys.

"Termination" is not defined in ORS 652.140, however, the Oregon Supreme Court defined the term for the purposes of the statute in *State ex rel Nilsen v. Johnston*, 377 P.2d 331, 333-34 (Or. 1962). That "definition becomes a part of the statute as if written into it at the time of its enactment." *Wilson v. Smurfit Newspring Corp.*, 107 P.3d 61, 66 (Or. Ct. App. 2005) (citation and quotation omitted). The *Johnston* court held that "[t]ermination of employment

contemplates a severance of the employment relationship rather than a mere temporary cessation of work." *Johnston*, 377 P.2d at 333-34.  Whether there has been a termination is "for the trier of fact to resolve from a consideration of all of the circumstances." *Id*. at 334.  However, where "the historical facts are undisputed, the question becomes one of law" to be resolved by the court "because in such circumstances the question is purely one of statutory interpretation." *Wilson*, 107 P.3d at 66 n.4.

 The question here is factual, rather than legal.  Plaintiff technically remained available for placement in defendant's computer system following her removal from Convergys, and plaintiff signed an agreement acknowledging that it was her responsibility to remain in contact with defendant regarding her availability for future placement.  However, she signed this agreement prior to her removal from Convergys on November 21, 2006, and the manner in which her employment with Convergys concluded raises questions regarding whether it was in fact a termination.  First and foremost, plaintiff contends that Wester told her she was being terminated. Additionally, the primary reasons proffered for plaintiff's removal from Convergys (insubordination and refusal to communicate) are not particular to her work at Convergys, but are germane to her employment with defendant generally.  These facts raise substantial questions as to whether her removal from Convergys was in fact more than "a mere temporary cessation of work" and was indeed, a termination from defendant's employ as well.  That defendant's computer system listed plaintiff as available for placement means little if there was no chance defendant would place her in another firm.  Certainly, it is difficult to imagine defendant placing plaintiff in a second position given the unhappy conclusion to her placement at Convergys.

 This court also finds that there are questions regarding whether defendant "wilfully" withheld plaintiff's wages.  In this context, the term wilful does not necessarily imply malice,

"but merely that the thing done or omitted to be done was done or omitted intentionally."

*Johnston*, 377 P.2d at 333(quotation and citation omitted). In short, a defendant acts wilfully, when it knows what it is doing, intends to do what it is doing, and is a free agent. *Id.* This "definition excludes the [defendant] who does not know that [its] employee has left [its] employ or who has made an unintentional miscalculation." *Id.* Based on the evidence submitted, a jury could reasonably conclude that defendant knew plaintiff had been terminated, and chose to pay plaintiff a week after her termination, rather than immediately depositing plaintiff's final paycheck. Accordingly, plaintiff may proceed with this wage claim and may seek penalty wages from the time of her alleged termination until she received her wages on November 28, 2006.

### 5.    Motion to Strike

Defendant moves to strike portions of plaintiff's Surreply [125] because it contains arguments regarding the substance of the underlying Motion for Summary Judgment in addition to plaintiff's responses to defendant's evidentiary objections as allowed by Local Rule 56(b). Pursuant to Local Rule 7-1(e)(3), plaintiff was not permitted to file a surreply absent permission from the court on any issue aside from defendant's evidentiary objections. In defendant's Reply brief, defendant asserted eighty-three evidentiary objections to statements contained in *pro se* plaintiff's Response and declaration. The majority of these objections, while technically correct, were trivial and unnecessary. Especially so because plaintiff is acting *pro se*. In response to these objections, plaintiff filed her Surreply, addressing both the evidentiary objections and the substance of the Motion for Summary Judgment. Much like defendant's evidentiary objections, defendant's Motion to Strike is mostly correct, and equally pointless. The vast majority of the paragraphs objected to, even if considered by the court, would not provide a basis for plaintiff to avoid summary judgment on the bulk of her claims as they merely reiterate unpersuasive

arguments already in the record.  The court hereby grants defendant's Motion to Strike in part.

Defendant's motion is denied with respect to paragraphs 37, 40-42, 50-52, and 65.  These

paragraphs, while not utilizing proper legalese, do provide a basis for the court to analyze

defendant's evidentiary objections.

## CONCLUSION

For the reasons provided, defendant's Motion for Summary Judgment [118] is

GRANTED IN PART and Motion to Strike [127] is GRANTED IN PART.  Defendant's Motion

for Summary Judgment is granted on all claims aside from plaintiff's wage claim pursuant to

ORS 652.140(1), that plaintiff's final paycheck was untimely.

IT IS SO ORDERED.

DATED this 28th day of September, 2011.


/s/ Ancer L. Haggerty
Ancer L. Haggerty
United States District Judge

22 - OPINION AND ORDER